# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION

**CIVIL ACTION NO. 1:11CV-66-JHM**

**KENTUCKY FARM BUREAU**
**MUTUAL INSURANCE COMPANY**
**(a/s/o Patrick Moorcroft)**                                                   **PLAINTIFF**

**VS.**

**BROAN-NUTONE, LLC, and**
**JAKEL MOTORS INCORPORATED**                                   **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Broan-Nutone and Jakel Motors'

Combined Motion for Summary Judgment and Motion to Exclude Plaintiff's Expert Witnesses

[DN 71], Defendants' Motion for Oral Argument [DN 76], and Motion for Leave of Court to File

Its Reply Memorandum Exceeding the 15 Page Limit [DN 74].  Fully briefed, these matters are

ripe for decision.

## I.  BACKGROUND

In the early morning of January 11, 2011, Patrick and Natalie Moorcroft, Plaintiff

Kentucky Farm Bureau's (KFB) insureds, evacuated their home after it ignited into flames.  Mr.

Moorcroft was the first to become aware of the fire after hearing some unusual sounds

originating from the master bathroom.  Mr. Moorcroft first thought that his son was playing in

the bathroom, but then he "saw an orange flicker and instinctively knew what it was." (Patrick

Moorcroft Dep., DN 72-2, at 3).  Upon entering the bathroom, Mr. Moorcroft turned off the

power switches and threw water in the area where he noticed the orange flickering.  Mr.

Moorcroft specifically remembered that when he entered the bathroom that only the switch to the

exhaust fan was on and not the light switch. Additionally, Mr. Moorcroft noticed that the grill of

the fan was melted and remembered actually seeing the fan itself on fire.

After Mr. Moorcroft attempted to douse the flames with water from the bathroom, he

went in the attic to see how far the fire had spread. Because the fan was in the corner of the attic,

Mr. Moorcroft had to completely get in the attic to observe the fire. By the time he made it up to

the attic, he said that the roof was already on fire. Mr. Moorcroft also observed fire coming out

of the casing of the fan. The Moorcrofts then called 911 and left the house with their children.

Following an investigation into the cause of the fire by experts retained by Plaintiff, KFB

filed suit against Broan-Nutone, manufacturer of the electric exhaust fan, and Jakel Motors,

manufacturer of the motor inside the fan, under a theory of manufacturing and design defect.

Defendants have moved to exclude the expert testimony of Kevin Lewis and William Mers

Kelly. Defendants have also moved for summary judgment under the theory that Plaintiff has

failed to sufficiently establish legal causation for its products liability case.

## II. STANDARD OF REVIEW
### A. Expert Testimony

Defendant seeks to exclude the testimony of Plaintiff's experts, Kevin Lewis and William

Mers Kelly, alleging in part that their testimony does not meet the standards of Fed. R. Evid. 702

and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if: (a) the expert's
> scientific, technical, or other specialized knowledge will help the trier of fact to
> understand the evidence or to determine a fact in issue; (b) the testimony is based
> on sufficient facts or data; (c) the testimony is the product of reliable principles
> and methods; and (d) the expert has reliably applied the principles and methods to
> the facts of the case.

Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert evidence is both

reliable and relevant. Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 407 (6th Cir.

2006) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)). In determining whether testimony is reliable, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595. The Supreme Court identified a non-exhaustive list of factors that may help the Court in assessing the reliability of a proposed expert's opinion. These factors include: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." Id. at 592–94. This gatekeeping role is not limited to expert testimony based on scientific knowledge, but instead extends to "all 'scientific,' 'technical,' or 'other specialized' matters" within the scope of Rule 702. Kumho Tire Co., 526 U.S. at 147.

Whether the Court applies these factors to assess the reliability of an expert's testimony "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Kumho Tire Co., 526 U.S. at 150 (quotation omitted). Any weakness in the underlying factual basis bears on the weight, as opposed to admissibility, of the evidence. In re Scrap Metal Antitrust Litig., 527 F.3d 517, 530 (6th Cir. 2008) (citation omitted).

**B. Summary Judgment**

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts

demonstrating a genuine issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]"  Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  Anderson, 477 U.S. at 252.  It is against this standard the Court reviews the following facts.

## III.  DISCUSSION

### A.  Motion to Exclude Expert Testimony

Defendants seek to exclude the expert testimony of both Kevin Lewis and William Mers Kelly.[1]  Defendants assert five arguments for the exclusion of the experts' testimony: (1) Plaintiff did not provide a proper "chain of custody" for the crimp studied by the experts; (2) the experts failed to identify the type of crimp; (3) "Kelly's visual inspection was not conducted pursuant to any recognized and repeatable methodology"; (4) Kelly failed to examine "the crimpling process or the quality control for crimpling wires in the fan units manufacturing process"; (5) "Kelly's circumstantial opinion failed to eliminate alternative ignition sources."

---

[1] The Court notes that Defendants make arguments concerning the exclusion of expert Eric Evans in their reply brief, but Defendants never made any arguments to this effect in their initial filing.  In fact, Defendants' conclusion section in their initial motion asked the Court to only exclude experts William Mers Kelly and Kevin Lewis. (Defs.' Combined Mot., DN 71, at 18).  As such, the Court will not address any of Defendants' arguments as to Eric Evans.

(Defs.' Combined Mot., DN 71, at 10-11). Plaintiff responds to each argument by establishing the contrary within the experts' depositions.

Under the "chain of custody" argument, Defendants claim that neither Kevin Lewis nor William Mers Kelly should be allowed to opine about the crimp because they "can[not] confirm where the crimp in question was found in the fire debris nor can they provide any testimony as to whether it was specifically part of the fan/light which is subject to this litigation." (Defs.' Combined Mot., DN 71, at 11). Plaintiff responds by noting that Defendants ignore the testimony of Lewis regarding where he found the crimp. When asked about where he found the crimp, Lewis stated that "it was in the fan enclosure. I mean, it was in the metal box of the enclosure when we dumped it out." (Lewis Dep., DN 71-3, at 79). Plaintiff also points out that Defendants' expert, Terry Beckham, along with representatives from both parties were present when evidence was collected for further examination. Based on Lewis' testimony and the fact that both parties were present when debris was collected, the Court is sufficiently satisfied that there are no chain of custody problems in this case.

Defendant next argues that Plaintiff's experts, Kelly and Lewis, failed to identify the crimp as either a neutral or ground crimp. The difference between a neutral and ground crimp, as Defendants explain, is that an eleven-strand neutral crimp is not subject to resistance heating as opposed to a sixteen-strand ground crimp that is subject to heat resistance and electric current. According to Defendants, the determination of the type of crimp is necessary for any discussion about its relation to the cause of the fire because a ground crimp could not have caused a fire since it is not subject to heat resistance. Thus, Defendants contend Plaintiff's experts should have performed a cross-sectioning test, a method of determining the number of strands in the

crimp. In addition, Defendants argue that a visual inspection of the crimp is an insufficient methodology for determining the crimp as potential cause for the fire.

In response to Defendants' argument concerning testing of the crimp, Plaintiff's expert, Lewis, explained that he did not believe that cross-sectioning would reveal any relevant information because "the crimp connector had suffered significant amount of heat damage, that it was probably not going to provide any useful information." (Lewis Dep., DN 71-3, at 63). As to a visual inspection being insufficient, Defendant, Broan-Nutone, asserted an almost an identical argument against Kelly's testimony in Arch Ins. Co. v. Broan-Nutone, LLC,. 09CV-319-JBC, 2011 WL 3475297 (E.D. Ky. Aug. 9, 2011). Judge Coffman denied Broan-Nutone's motion to exclude after finding his testimony both relevant and reliable.[2] Id. at *2. Similar to Judge Coffman's conclusion, the Court believes that Defendants' arguments as to the type of testing engaged in by experts Kelly and Lewis reflect concerns about weight of testimony, not admissibility, and those issues may be raised during questioning of the experts. In re Scrap Metal Antitrust Litig., 527 F.3d 517, 530 (6th Cir. 2008) (citation omitted). In addition, the Court notes that Kelly's testimony not only utilized visual inspection of the components parts of the fan and pictures of the area around the fire but also his analysis utilized statements by the Moorcroft family. The combination of this material is sufficient to cross from mere speculation to being supported by a "reasonable factual basis." United States v. L.E. Cooke Co., Inc., 991 F.2d 336, 342 (6th Cir. 1993) (quoting United States v. 0.161 Acres of Land, 837 F.2d 1036, 1040 (11th Cir. 1988) ("Where an expert's testimony amounts to 'mere guess or speculation,' the court

---

[2] On appeal, Defendant Broan-Nutone argued that Plaintiffs failed to produce sufficient evidence as a matter of law to properly present a question to the jury. Arch Ins. Company v. Broan-Nutone, 509 Fed. Appx. 453, 462 (6th Cir. 2012). Defendant contended that Kelly's testimony was "subjective and not based on proven facts," but the court found that "[h]is opinion was based on his direct observations and experience, and it was not unreasonable for the jury to rely on that opinion." Id. at 463.

should exclude his testimony, but where the opinion has a reasonable factual basis, it should not be excluded.").

Defendants also initially asserted that Kelly failed to detail the manufacturing process that would have created a problem with quality control. However, Defendants' brief lacked any arguments or factual basis for this theory of exclusion. As such, there is no reason to discuss this particular issue.

Finally, Defendants contend that Kelly's examination failed to eliminate alternative causes for the fire, specifically a corner light in the attic. Defendants base their argument on the testimony of James Finneran, Defendant's expert, who stated that he probably would have investigated the light as a potential source for the fire. Also, Defendants note that Lewis said that he "probably would have" taken the light. (Lewis Dep., DN 71-3, at 41). However, in the rest of Lewis' statement concerning the light, he explained that experts from both parties were present when sorting through the debris and neither side thought to collect the particular light for more examination. Id. Additionally, testimony from Mr. Moorcroft indicated that the light in question was not in use at the time of the fire and that his family left the power to that switch in the off position. Defendant's expert, Terry Beckham, conceded that if the light were in the off position, then it could be ruled out as a potential source of the fire. There seems be no indication that Plaintiff's experts failed to address the light as an alternative source for the fire. Moreover, the attic light as a potential alternative cause is more of an issue of weight, not admissibility. In re Scrap Metal, 527 F.3d at 53.

Because Plaintiff's experts Kelly and Lewis meet the standards set by Daubert, the Defendants' motion to exclude their testimony is **DENIED**.

**B. Summary Judgment Issues of Defect and Causation**

Defendant moves for summary judgment on both Plaintiff's manufacturing and design defect claims based on the theory that Plaintiff failed to present expert testimony as to the fan being the cause of the fire at the Moorcroft's residence. Specifically, Defendants argue that the Plaintiff must establish the exact mechanism that failed in order to demonstrate proximate cause in a products liability case. On the other hand, Plaintiff explains that Kentucky law does not require such a showing of a specific mechanism defect if experts can narrow the cause of the fire down to two or three explanations through circumstantial evidence and can also eliminate other potential sources for the fire.

In a product liability case, "the question is whether the product creates such a risk of an accident of the general nature of the one in question that an ordinarily prudent company engaged in the manufacture of such a product would not have put it on the market." Montgomery Elevator Co. v. McCullough, 676 S.W.2d 776, 780 (Ky. 1984) (quotation omitted). In Kentucky all products liability actions, "regardless of whether the case involves failure to adequately warn, defective design or other products liability theories, [require proof that] the product is defective." Leslie v. Cincinnati Sub–Zero Products, Inc., 961 S.W.2d 799, 803–04 (Ky. Ct. App. 1998). In addition, Kentucky law requires a plaintiff to prove legal causation, which is a showing that "defendant's conduct was 'a substantial factor in bringing about the harm.'" Arch Ins. Company v. Broan-Nutone, 509 Fed. Appx. 453, 462 (6th Cir. 2012) (quoting CertainTeed Corp. v. Dexter, 330 S.W.3d 64, 77 (Ky. 2010)). To prove legal causation, a plaintiff may rely on circumstantial evidence, but in doing so, the plaintiff must introduce "evidence that will support a reasonable inference that the defect was the 'probable' cause of the accident as distinguished from a 'possible' cause among other possibilities; otherwise, the jury verdict is based upon speculation

or surmise." Greene v. B.F. Goodrish Avionics Systems, Inc., 409 F.3d 784, 793 (6th Cir. 2005) (quoting Midwestern V.W. Corp. v. Ringley, 503 S.W.2d 745, 747 (Ky. 1973)).

Before addressing the main issue of causation, Defendants contend that they are entitled to a rebuttable presumption that the fan was not defective pursuant to KRS § 411.310 because the fan had been in use in the house for at least seven years. KRS § 411.310(1) provides that a product will be presumed not defective "until rebutted by a preponderance of the evidence to the contrary" when property damage "occurred either more than five (5) years after the date of sale to the first consumer or more than either (8) years after the date of manufacture." The parties do not dispute that the fan had been in use for more than five years. Therefore, the fan is presumed to not be defective. However, "[t]he statutory presumptions of KRS 411.310 do no more than leave the burden of proof with [Plaintiff] to prove that the [fan] was defective." Boon Edam, Inc. v. Saunders, 324 S.W.3d 422, 432 (Ky. Ct. App. 2010) (quoting Leslie, 961 S.W.2d at 803). Once the presumption is rebutted, material issues of fact exist as to whether the defectiveness caused or contributed to the plaintiff's injuries. See Smith v. Louis Berkman Co., 894 F.Supp. 1084, 1091 (W.D. Ky. Aug. 16, 1995). Therefore, the issue now is whether Plaintiff's proof is sufficient to rebut the presumption under KRS § 411.310. The Court will incorporate the discussion of defect with that of causation.

Defendants' main argument for summary judgment is that Plaintiff failed to properly establish causation by not being able to specify the exact defect that caused the fire. For this particular argument, Defendants primarily rely on decisions from other jurisdictions. However, the Sixth Circuit and other district courts in Kentucky, applying Kentucky substantive law, have addressed arguments similar to the one asserted by the Defendants. The facts and issues of law in the present case parallel those addressed by the Sixth Circuit in Siegel v. Dynamic Cooking

Systems, Inc., 501 F. App'x 397, 401 (6th Cir. 2012).  In Siegel the trial court granted a directed

verdict for the defendant because the plaintiff attempted to assert multiple theories for a

manufacturing and design defect claim.  Id.  However, on appeal, Judge Rogers, writing for the

Sixth Circuit, explained that in circumstances where a product suddenly malfunctions after

operating without incident and destroys the potentially defective components, a plaintiff "need

not establish whether the [product] contained a manufacturing defect or design defect."  Id. at

402. As to the defendant's argument in Siegel that the plaintiff must identify the specific

mechanism that failed in the product, the court referred to the following passage in disagreement:

> Where an incident could result from more than one cause, plaintiff tips the
> balance from possibility to probability only by ruling out other theories of
> causation: [W]here an injury may as reasonably be attributed to a cause that will
> excuse the defendant as to a cause that will subject it to liability, no recovery can
> be had.

Id. at 402-03 (quoting In re Beverly Hills Fire Lit., 695 F.2d 207, 218 (6th Cir.1982) (internal

quotation omitted)).

In this case, neither Kelly nor Lewis indicated the particular mechanism that failed in the

fan.  Lewis suggested that the fire in the fan could have resulted due to either a failure in the

windings or a failure in the crimp.  Kelly opined that fire resulted from a manufacturing defect

located in the "crimp connection area of the windings." (Kelly Dep., 71-1, at 38).  Although

neither of Plaintiff's experts identify a specific mechanism within the fan that failed, as similarly

found in Siegel, it is sufficient if Plaintiff's proof rules out all other possible causes of the fire

other than the fan.  In fact, this Court has previously concluded that a plaintiff's assertion of

multiple theories of a product defect does not necessarily prove fatal to its claim as long as the

plaintiff can eliminate other possible causes. Kentucky Farm Bureau Ins. Co. v. Gen. Elec. Co.,

2011 U.S. Dis. LEXIS 5574, *9-10 (W.D. Ky. Jan. 19, 2011).  As to outside causes, Defendants'

expert James Finneran identified three potential causes of the fire that Plaintiff's experts failed to exclude, including the branch wiring in the attic, the eve light located near the fan, and "multiple melted conductors recovered from the attic." (Defs.' Reply Mem., DN 75-1, at 8). Plaintiff contends that all of these potential sources have either been excluded by its experts or by the testimony of Mr. Moorcroft.

As to the branch wiring and melted conductors in the attic, Finneran asserted that there are branch conductors that could have been the source of the fire, but it is impossible to tell due to the melted condition of the wiring. (Finneran Dep., DN 71-5, at 18). In addition, he suggested that these wires might not have even been those connected to the fan. Id. When asked about this branch wiring, Kelly stated that he "saw no anomalies or evidence of electrical activity in the branch wiring and the wiring where the branch wiring connected to the fan." (Kelly Dep., 71-1, at 39). As to the issue of melting in the wiring, Kelly explained that he could differentiate wires melted in the course of the fire versus wires with electrical activity that were the result of the fire. Id. at 39-40. Kelly opined that "localized damage" in the windings area of the fan, as indicated by "very distinct edges" or "pock marks," provided evidence of electrical activity in the area. Id. As to the branch wiring, the Court believes that Kelly's testimony sufficiently eliminates it as a possible cause of the fire.

Finally, the last potential cause that Defendants indicate is the eve light. The Court has already previously discussed this particular issue within the context of excluding expert testimony. As for the light being a possible cause of the fire, the Court believes that based on not only the conclusions of Kelly but also Mr. Moorcroft's statement as to the position of the switch, Plaintiff eliminated the light as a potential source of the fire.

Because the Court believes that Plaintiff sufficiently eliminated all other causes besides for the fan, KFB successfully created a reasonable inference that a defect in the fan was the probable cause of the fire. In doing so, Plaintiff also rebutted the presumption that the fan was not defective under KRS § 411.310.

## V.  CONCLUSION

Defendants Broan-Nutone and Jakel Motors' Combined Motion for Summary Judgment and Motion to Exclude Plaintiff's Expert Witnesses is **DENIED** [DN 71]. Also, Defendants' Motion of Oral Argument is **DENIED** [DN 76] and Motion for Leave of Court to File Its Reply Memorandum Exceeding the 15 Page Limit is **GRANTED** [DN 74].

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record

October 21, 2013